359 So.2d 84 (1978)
STATE of Louisiana
v.
Stephen Clifton BYERS.
STATE of Louisiana
v.
Frank VOELKER, III, et al.
STATE of Louisiana
v.
James Dewey CARR and John Quade.
Nos. 60929, 61037 and 61053.
Supreme Court of Louisiana.
May 22, 1978.
Rehearing Denied June 15, 1978.
*85 Bruce M. Bolin, Fish & Montgomery, Minden, for Stephen Clifton Byers.
Voelker, Ragland, Brackin & Crigler, Charles R. Brackin, Lake Providence, for Frank Voelker, III.
Stephen R. Burke, Minden, for Carr and Quade.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Henry N. Brown, Jr., Dist. Atty., for plaintiff-respondent.
SANDERS, Chief Justice.
The State charged the defendants with producing marijuana, a violation of LSA-R.S. 40:966(A)(1). The defense filed motions to suppress the marijuana, asserting that it was obtained in an unconstitutional search and seizure.
Two evidentiary hearings before different judges were held on the motions with a stipulation that the evidence adduced at the first hearing would be considered in the second. The motions to suppress were overruled.
We granted writs to review the rulings. La., 352 So.2d 703, La., 352 So.2d 704 (1977).
The following facts are pertinent to our consideration of the validity of the search and seizure:
In October of 1976, a hunter was on the 640-acre-tract of land owned by Burt and Rollin Williams. The property was posted with signs. These signs bore such announcements as: "PRIVATE ROAD; DO NOT ENTER"; "POSTED NO HUNTING, FISHING, TRESPASSING"; "POSTED NO HUNTING." In addition to these signs, the trial judge found that one of the defendants had "posted signs along one of the logging roads leading from the public road into the property and erected two posts set in concrete and connected with a chain in an effort to deny access to the general public."
While the unidentified hunter was crossing the land, he saw a patch of plants under cultivation, which he suspected was marijuana. He reported this observation to the Chief of Police of Sibley, Louisiana. Together they returned to the land and looked at the plants. Later, the Chief of Police contacted Deputy Sheriff Robinson, and these two men went on the property and looked at the plants. Both of these entries on the land were made without a search warrant and without the consent of the owner. No other law enforcement activity took place during 1976.
In early 1977, Deputy Robinson went on the property again to determine whether marijuana was still being cultivated. This entry was also made without a warrant or consent.
Deputy Robinson concluded from his inspection that there were signs of cultivation and instituted a surveillance of the property.
On May 26, 1977, Robinson and another deputy again went on the property and observed that there were several vehicles on the property. These vehicles were "parked" on the private logging road near the plots of marijuana. The officers proceeded to the area they knew to be cultivated, saw the defendants, and arrested all but one of them without a warrant. The other defendant was arrested the following day.
The record clearly establishes, we think, that the public was reasonably alerted that intrusion upon the land was banned by the owner.
*86 The testimony and exhibits also confirm defendants' assertion that none of the marijuana plants were visible from the public road or from the outside of the property.
In the several motions to suppress evidence, defendants allege that the warrantless search and seizure violated both the Fourth Amendment to the United States Constitution and Article 1, Section 5 of the Louisiana Constitution of 1974.
Both lower courts found the present case distinguishable from State v. Fearn, La., 345 So.2d 468 (1977), in which this Court struck down a seizure of marijuana under somewhat similar circumstances. They also held that this warrantless search and seizure was permitted under the "open fields" doctrine enunciated by the United States Supreme Court in Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924). We disagree.
It is well established that the Fourth Amendment protects people, not simply places, against unreasonable searches and seizures. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); State v. Hines, La., 323 So.2d 449 (1975). The right protected is that of privacy, which has been described as "one of the unique values of our civilization." McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948). The crucial question, then, in cases such as this, is whether or not there is a legitimate expectation of privacy. United States v. Miller, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976); State v. Nine, La., 315 So.2d 667 (1975); State v. Hines, supra; State v. Fearn, supra.
In the present case, the marijuana was not visible from the public road. The posted signs announced that the logging road was private and prohibited entry of the land.[1] A chain barred access to the private road, though it was down at the time of the arrest and seizure. We conclude that, under these circumstances, the defendants had a legitimate expectation of privacy.
This Court's decision in State v. Fearn, supra,[2] is controlling here. There, the Court stated:
"The question here, as in State v. Nine, 315 So.2d 667 (La.1975), is whether the defendant's justified expectation of privacy under the Fourth Amendment of the United States Constitution and under Article 1, § 5 of the Louisiana Constitution of 1974 was violated by the warrantless seizure. The record reveals that the ditch where defendant was growing the plants was entirely upon the property belonging to defendant's parents, whose property line extended beyond the far side of the ditch. Four to five foot weeds were growing in the ditch; six of the twelve plants, which were less than a foot high, were not visible except upon close inspection. The remaining plants, approximately thirty inches high, although visible among the weeds from the next door neighbor's house, were not identified by the police except from the edge of defendant's property line. The ditch where the plants were located was screened from view of defendant's parents' house by a shed and a fence around a swimming pool. Defendant apparently relied on the high weeds in the ditch (he had planted the marijuana in April) and the distance to the property line to preserve
the privacy of his activities. Although this expectation was not fully justified (Mr. Penton testified that he could observe the plants from some distance) it was reasonable. The area of the ditch in which the plants were cultivated apparently could not be seen from the public street. Therefore, though in fact visible, the plants were located in a position on defendant's parents' property which could be reasonably expected to assure defendant's privacy and were not openly displayed to public view."
*87 The State relies upon the decision of the United States Supreme Court in Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), and Air Pollution Variance Bd. v. Western Alfalfa, 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974) applying what has been usually described as the open fields doctrine.
In our opinion, these cases are inapplicable here. Unlike the present case, there was no evidence in either of them that specific steps had been taken to exclude the public from the area searched.
The State also relies upon the "plain view" doctrine. The doctrine is that a law enforcement officer, who has a right to be where he is, may seize objects in plain view. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 564 (1971); Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); State v. Hargiss, La., 288 So.2d 633 (1974).
In Harris v. United States, supra, the United States Supreme Court stated:
"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. Ker v. California, 374 U.S. 23, 42-43, [10 L.Ed.2d 726, 743, 83 S.Ct. 1623] (1963); United States v. Lee, 274 U.S. 559, [71 L.Ed. 1202, 47 S.Ct. 746] (1927); Hester v. United States, 265 U.S. 57, [68 L.Ed. 898, 44 S.Ct. 445] (1924)."
The doctrine, of course, does not apply if the view is from a place that the officers have no right to be. In the present case, the officers observed the marijuana from a position on the property. The point of observation was a place that the officers had no right to be without a search warrant. Accordingly, we conclude that the plain view doctrine is inapplicable.
We hold that the motions to suppress are well-founded.
For the reasons assigned, the rulings of the district court are reversed, the motions to suppress are sustained, and the cases are remanded for further proceedings according to law and consistent with the views herein expressed.
NOTES
[1] The question of whether the property was legally posted in compliance with state law is not decisive, since the issue is one of expectation of privacy.
[2] The author of this opinion dissented in State v. Fearn.