**UNITED STATES of America, Plaintiff,**

v.

**Lonnie Zachariah GROGAN, Defendant.**

**No. 12100.**

United States District Court
M. D. Alabama, N. D.

Nov. 29, 1968.

Ben Hardeman, U. S. Atty., and Jack B. Patterson, Asst. U. S. Atty., Montgomery, Ala., for plaintiff.

Lyndol Bolton, Sylacauga, Ala., for defendant.

## ORDER

FRANK M. JOHNSON, Jr., Chief Judge.

This cause is now submitted on defendant Grogan's motion to suppress certain of his property seized in a search by federal officers on July 11, 1968. As a result of the search and seizure, defendant is presently under indictment in this district for violation of

the internal revenue laws of the United States. The property seized consists of 20 gallons of nontaxpaid whisky and one 200 gallon box-type pot still.

At a hearing before this Court on November 25, 1968, conducted at the instance of defendant, testimony was adduced concerning the circumstances surrounding the seizures. The seizures took place on property in Coosa County, Alabama, owned by defendant's wife, upon which is situated their home. Alcohol & Tobacco Tax Agent John Holt, an outstanding investigator and representative of the Government, with considerable experience in the Coosa County area, testified that on the day in question he was in the county with Agent James Hodge, a relative newcomer to the agency, in order to familiarize the latter with "areas of violation." Agent Holt had previously arrested and obtained convictions for liquor violations against Grogan. At least two other members of the family also had reputations as violators. Upon identifying the Grogan house to Hodge, Holt decided that it would be useful to introduce Hodge to Grogan, apparently because he believed Grogan was a prospective informer. The two agents drove into Grogan's yard, stopped, and blew their horn. When no one appeared, Agent Holt went onto the front porch and knocked on the door. Parked within a few feet of the porch was a 1966 International D-1000 Travelall. While standing on the porch, Holt could easily see that there were four plastic five-gallon jugs containing a clear liquid on the floorboard behind the front seat of the station wagon. From his experience, Holt knew that these jugs were the type typically used in the moonshine whisky business. After informing Hodge of his discovery, Holt opened the rear seat of the car and confirmed his belief that he was witnessing a violation of the internal revenue laws by removing the top from the jugs and smelling the contents.

The pot still was discovered shortly thereafter when the agents went through a gate into defendant's back yard and saw the still through the window of a small outbuilding used for storage. They did not enter the locked building at this time.

Defendant's son drove into the yard after these events had transpired. Upon ascertaining from the son that the 1966 International vehicle belonged to defendant, the officers asked him to request his father, who was at his place of employment, to come to the residence. Defendant came and confirmed that the vehicle belonged to him at which time he was placed under arrest. At the officers' request, defendant unlocked the outbuilding and the officers removed the pot still and a quantity of copper pipe suitable for use as steamlines in a still operation. The officers conducted a further search of the premises outside the house. That proving fruitless, they confiscated the liquor, impounded the vehicle, destroyed the still, and left.

The Government admits that the property was seized against defendant's will and without a search warrant. The critical issue in the case is the legality of the initial accidental discovery of the moonshine whisky. The Government claims that it was lawful under the "plain view" doctrine enunciated in Harris v. United States, 390 U.S. 234, 88 S. Ct. 992, 19 L.Ed.2d 1067, and Miller v. United States, 356 F.2d 63 (5th Cir. 1966). In *Harris* the Supreme Court stated:

"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence. Ker v. California, 374 U.S. 23, 42–43, 83 S.Ct. 1623, 1634, 1635, 10 L.Ed.2d 726 (1963); United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924)." Harris v. United States, supra 390 U.S. at 236, 88 S.Ct. at 993.

■ Defendant makes much of the fact that the vehicle was within the curtilage of the house. And, as is clear from the portion quoted above, the plain view doctrine is only applicable when the officer has a *right* to be in the position to have that view. But this Court is clear to the conclusion that Agents Holt and Hodge had a right to be on defendant's porch for the lawful purpose they were pursuing. The recent electronic eavesdropping decision, Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, strongly supports this conclusion. There, Justice Stewart speaking for the Court stated:

"But this effort to decide whether or not a given 'area', viewed in the abstract, is 'constitutionally protected' deflects attention from the problem presented by this case. For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. See Lewis v. United States, 385 U.S. 206, 210, 87 S.Ct. 424, 427, 17 L.Ed.2d 312; United States v. Lee, 274 U.S. 559, 563, 47 S.Ct. 746, 748, 71 L.Ed. 1202. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. See Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688; Ex parte Jackson, 96 U.S. 727, 733, 24 L.Ed. 877." Katz v. United States, supra at 351–352, 88 S.Ct. at 511.

Justice Harlan, concurring, discussed the principle involved in a manner which makes clear its relationship to the plain view doctrine:

"My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' Thus, a man's home is, for most purposes, a place where he expects privacy, but objects, activities, or statements that he exposes to the 'plain view' of outsiders are not 'protected' because no intention to keep them to himself has been exhibited. On the other hand, conversations in the open would not be protected against being overheard, for the expectation of privacy under the circumstances would be unreasonable. Cf. Hester v. United States, supra." Katz v. United States, supra at 361, 88 S. Ct. at 516.

There was no reasonable expectation of privacy for the illicit liquor left in defendant's vehicle in this case. There was no indication of an actual expectation, such as a no trespassing sign. Indeed, the car doors were not even locked. And, it would scarcely be reasonable to expect that no visitors with legitimate purposes would approach the house. The discovery of this liquor did not constitute a search.

■ Once the agents lawfully discovered that the vehicle contained jugs of illicit liquor they were in possession of information tantamount to probable cause to believe an offense had been and was then being committed by defendant upon defendant's premises. This probable cause amply justified defendant's arrest and the search incidental thereto. Harris v. United States, 331 U.S. 145, 150–153, 67 S.Ct. 1098, 91 L.Ed. 1399. The incidental search was proximate in time and place to the arrest and was reasonably related to the offense for which defendant was arrested. Cf. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; Barnett v. United States, 384 F.2d 848 (5th Cir. 1967). In the circumstances of this case, there can be little doubt that the property in question—the box-type still —was the product of a reasonable search and seizure. See United States v. Rabinowitz, 339 U.S. 56, 66, 70 S.Ct. 430, 94 L.Ed. 653.

In accordance with the foregoing, it is the order, judgment and decree of this

Court that Lonnie Zachariah Grogan's motion to suppress the evidence of the 20 gallons of nontaxpaid whisky and the 200 gallon box-type pot still be and the same is hereby denied.