COURT OF APPEALS OF VIRGINIA

Present: Judges Kelsey, Haley and Beales
Argued at Chesapeake, Virginia


ALONZO GIBSON, JR.

v.      Record No. 0564-06-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE JAMES W. HALEY, JR.
DECEMBER 18, 2007


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Timothy S. Fisher, Judge

Charles E. Haden for appellant.

Joshua M. Didlake, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


I. Introduction

Alonzo Gibson, Jr., appeals his convictions from the Circuit Court for the City of

Newport News for distribution of or possession with intent to distribute controlled substances on

or near a school in violation of Code § 18.2-255.2 and possession of marijuana with intent to

distribute in violation of Code § 18.2-248.1(a)(2). Gibson contends the police violated his

constitutional rights by using a flashlight to illuminate contraband in his pocket during night

hours. Finding no error, we affirm.

II. Facts

On October 1, 2004, Officer Hahn of the Newport News Police Department and a state

police trooper were patrolling high crime areas. When the officers reached the 200 block of

Orcutt Avenue, they looked at a parking lot behind a public housing unit. The time was around

8:00 p.m., and it was dark. Although the parking lot had poor lighting, the officers saw a group

of people standing behind the apartment building. The building had a "No Trespassing" sign on

it. The officers drove near the group of persons to investigate. As they did so, the group began to disperse.

Officer Hahn stepped out of the car and asked Gibson, who was walking away, how he was. Gibson briefly stopped. Officer Hahn then inquired whether Gibson lived in the apartment complex. Gibson responded affirmatively. Officer Hahn asked Gibson where he lived in the building. In response, Gibson turned his back to point to an apartment over his shoulder. As he did this, Officer Hahn scanned Gibson's body with a flashlight. Gibson's right front pocket had a bulge so that the pocket remained open. Officer Hahn was able to shine the flashlight into the pocket and see a green leafy substance he suspected was marijuana based on his experience. Officer Hahn then detained Gibson and retrieved the bag from Gibson's pocket. Eight smaller bags were then discovered. Officer Hahn did not touch Gibson until he detained him. At trial, Officer Hahn acknowledged he had no reasonable suspicion of criminal activity before the flashlight search.

A grand jury indicted Gibson for distribution of or possession with intent to distribute controlled substances on or near a school in violation of Code § 18.2-255.2 and possession of marijuana with intent to distribute in violation of Code § 18.2-248.1(a)(2) on September 12, 2005. Gibson filed a motion to suppress on October 12, 2005.[1] The motion to suppress was

---

[1] Gibson's two sentence motion stated in its entirety as follows:

> COMES NOW, the defendant, ALONZO GIBSON, by his counsel, Ronald L. Smith, and respectfully moves the Court to suppress any and all statements made by the defendant to law enforcement personnel or their agents that were taken in violation of the Virginia and United States Constitution [sic], defendant [sic] further moves to suppress any and all evidence that was discovered pursuant to a search and or seizure by law enforcement personnel or their agents. Defendant avers that said search and or seizures were in violation of constitutional rights as guaranteed by the United States and Virginia Constitution [sic].

heard as part of a bench trial on December 13, 2005. The circuit court denied the motion and convicted Gibson on both charges.

## III. Analysis

Gibson argues the use of a flashlight by a police officer constitutes an unconstitutional search when that light renders contraband in a pocket that is in plain view during daylight hours visible during night hours.[2] We disagree.

In reviewing the circuit court's denial of Gibson's motion to suppress, this Court views the facts in the light most favorable to the Commonwealth. Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980). The Court is "'bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them.'" King v. Commonwealth, 49 Va. App. 717, 720, 644 S.E.2d 391, 392-93 (2007) (quoting McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*)). However, since the constitutional validity of a search involves both factual and legal questions, we

---

Gibson's motion did not conform with Rule 3A:9(b)(3). That Rule states: "Any motion made before trial shall be in writing if made in a circuit court, unless the court for good cause shown permits an oral motion. A motion shall state with particularity the ground or grounds on which it is based."

[2] On brief, Gibson argues Officer Hahn seized him for Fourth Amendment purposes by speaking with him. At trial, Gibson's counsel stated the following in support of the motion to suppress:

> Judge, in moving to suppress the evidence, the issue as I see it is does the defendant have a reasonable expectation of privacy inside his pocket? And I think the answer to that is yes.
>
> The second evaluation of the issue would be what the officer use had [sic] to invade that expectation of privacy inside your pocket. We know that the police can't use a heat sensor to determine if there's, for example, grow lights inside your house. That's been ruled unconstitutional.

Gibson did not argue Officer Hahn illegally detained him by speaking with him in the circuit court, and, accordingly, we do not now consider it. Rule 5A:18.

"independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002). Gibson has the burden of showing reversible error on appeal. Bolden v. Commonwealth, 263 Va. 465, 470, 561 S.E.2d 701, 704 (2002).

The Fourth Amendment of the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The key inquiry regarding whether the Amendment affords protection is "whether a person has a 'constitutionally protected reasonable expectation of privacy.'" Oliver v. United States, 466 U.S. 170, 177 (1984) (quoting Katz v. United States, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)). The plain view doctrine provides that no reasonable expectation of privacy attaches to objects exposed to plain view. Horton v. California, 496 U.S. 128, 133 (1990). Thus, police observation of objects in plain view does not implicate the Fourth Amendment so long as the police are legitimately in the place where they viewed the objects. Minnesota v. Dickerson, 508 U.S. 366, 375 (1993).

Case law concerning whether police use of artificial light to bring objects into plain view constitutes a search under the Fourth Amendment has a long history. In United States v. Lee, 274 U.S. 559, 560 (1927), a Coast Guard vessel followed a boat suspected of illegal activity. The Coast Guard boat aimed a searchlight at the boat and ordered the men aboard to surrender. Id. at 561. In an opinion by Justice Brandeis, the Court held the use of a searchlight to search the boat did not constitute a search for constitutional purposes. Id. at 563. The Court stated: "[N]o search on the high seas is shown. The testimony of the boatswain shows that he used a searchlight. . . . Such use of a searchlight is comparable to the use of a marine glass or a field glass. It is not prohibited by the Constitution." Id.

The Supreme Court next addressed the use of a flashlight to aid an officer's vision in Texas v. Brown, 460 U.S. 730 (1983) (plurality opinion). In that case, a police officer named Tom Maples was working at a routine checkpoint in Fort Worth, Texas. Id. at 733. Maples stopped a car driven by Brown and asked for his driver's license. Id. Maples looked into the car with the aid of a flashlight and saw an opaque balloon tied near the top. Id. He suspected the balloon contained narcotics. Id. at 734. Maples altered his position to the car to gain a better view of the glove compartment, which Brown had opened to look for his driver's license. Id. Maples saw an open bag of balloons, loose white powder, and several plastic vials. Id. Maples and another officer arrested Brown and seized the suspected drugs, which later tested as heroin. Id. at 734-35. The Supreme Court cited Lee and stated that "[i]t is likewise beyond dispute that Maples' action in shining his flashlight to illuminate the interior of Brown's car trenched upon no right secured to the latter by the Fourth Amendment." Id. at 739-40.

Another relevant case from the United States Supreme Court is United States v. Dunn, 480 U.S. 294 (1987). Law enforcement agents there shined a flashlight through netting covering a barn gate and discovered a narcotics laboratory. Id. at 298. A majority of the Court cited Brown and Lee to find no Fourth Amendment violation. Id. at 305. The Court stated that "the officers' use of the beam of a flashlight, directed through the essentially open front of respondent's barn, did not transform their observations into an unreasonable search within the meaning of the Fourth Amendment." Id.

This Court has briefly considered police use of flashlights in the context of automobile searches. In Derr v. Commonwealth, 6 Va. App. 215, 217, 368 S.E.2d 916, 917 (1988), a police officer used a flashlight to see inside a parked vehicle. Citing Dunn and Brown, the Court stated this "implicates no fourth amendment concerns." Id. at 220, 368 S.E.2d at 919. The Court went on to hold that while the officer later made an unconstitutional entry into the vehicle and

therefore evidence taken as a result of the entry must be suppressed, the officer could testify regarding his observations with the flashlight before the illegal entry.  Id. at 222, 368 S.E.2d at 919-20.  This was because "'[t]he use of the flashlight did not preclude application of the 'plain view' doctrine.'"  Id. at 222, 368 S.E.2d at 919 (quoting Effler v. Rose, 535 F.2d 980, 981 (6th Cir.), cert. denied 429 U.S. 982 (1976)).  The constitutionality of flashlight searches similarly arose in Wells v. Commonwealth, 6 Va. App. 541, 371 S.E.2d 19 (1988).  In a one sentence holding citing Brown, the Court held police did not violate the Fourth Amendment by using flashlights to observe the interior of a car.  Id. at 555, 371 S.E.2d at 26.  Finally, in Taylor v. Commonwealth, 10 Va. App. 260, 265, 391 S.E.2d 592, 595 (1990), this Court cited Derr to find an officer shining a flashlight into a truck bed did not violate the Constitution.

Other courts addressing the use of artificial light by police officers accord with this precedent by permitting the officers' actions under the plain view doctrine.  Thus, the federal circuit court in Marshall v. United States, 422 F.2d 185, 189 (5th Cir. 1970), stated:

> When the circumstances of a particular case are such that the police officer's observation would not have constituted a search had it occurred in daylight, then the fact that the officer used a flashlight to pierce the nighttime darkness does not transform his observation into a search.  Regardless of the time of day or night, the plain view rule must be upheld where the viewer is rightfully positioned . . . . The plain view rule does not go into hibernation at sunset.

See also United States v. Booker, 461 F.2d 990, 992 (6th Cir. 1972) ("Since it would not constitute a search for the officer to observe objects in plain view in the automobile in daylight, it ought not to constitute a search for him to flash a light in the car as he was walking past it in the night season."); State v. Rose, 909 P.2d 280, 286 (Wash. 1996) ("[T]he fact that a flashlight is used does not transform an observation which would fall within the open view doctrine during daylight into an impermissible search simply because darkness falls."); State v. Cullor, 315 N.W.2d 808, 811 (Iowa 1982) ("Observation of what would be readily visible in the daylight

- 6 -

does not become impermissible merely because a flashlight is used at night."); State v. Hodges, 360 S.E.2d 903, 906 (Ga. Ct. App. 1987) ("The use of a flashlight to expose to better light what would otherwise be visible to one who simply looks through the car window does not make the viewing any more of a search or any less of a plain view."); see generally 1 Wayne R. LaFave, Search and Seizure § 2.2(b) (4th ed. 2004).

Although most cases addressing the use of flashlights involve vehicles, some courts have addressed the use of flashlights to illuminate individuals and, importantly for this case, their pockets. We examine such cases.

In People v. Clark, 261 Cal. Rptr. 181 (Cal. Ct. App. 1989), two police officers noticed Clark "slumped over on a parkbench." Fearing for Clark's health, one of the officers asked him about his condition. Id. After Clark stated something incomprehensible, one of the officers asked Clark for his name. Id. Clark responded and further said he had documents in a jacket pocket showing his name. Id. He reached into the pocket for the documents. Id. Since the hour was late and the officers worried Clark had a weapon, they shined a flashlight on his pocket. As Clark pulled out his wallet, the deputies noticed a variety of jewelry. Id. Clark was later convicted of burglary. Id. On appeal, the court held the officers simply conducted a plain view observation of the pocket and so no Fourth Amendment violation occurred. Id. at 183.

In State v. Bainch, 536 P.2d 709, 710 (Ariz. Ct. App. 1975), a police officer driving in the early morning hours noticed Bainch unconscious on a bus bench. The officer used his flashlight to observe Bainch and noticed a pack of Kool cigarettes in his right front pocket. Id. The officer saw what he believed to be marijuana cigarettes in Bainch's left front pocket. Id. at 710-11. Bainch was convicted of possession of marijuana. Id. at 710. The court held use of a flashlight did not make the officer's observations a search. Id. at 712.

Under the facts of this case, it is clear Officer Hahn acted within the Constitution in shining his flashlight on Gibson.[3]  Officer Hahn testified that when he encountered Gibson it was dark.  He scanned Gibson with a flashlight when Gibson turned his body.  The scan revealed a pocket bulge in the right side of Gibson's pants.  The bulge was significant enough so the pocket remained exposed to public view even though Officer Hahn had not touched Gibson.  Officer Hahn stated he "was able to shine the light right into the pocket while he turned his back to me."  It was at this point Officer Hahn spotted a green leafy substance he suspected as marijuana.  In using a flashlight to view Gibson's pocket, Officer Hahn did no more than illuminate what Gibson had exposed to plain view.[4]  This case is similar to Clark, 261 Cal. Rptr. at 181, 183, where the court upheld officers' use of a flashlight to view the contents of a pocket.  "The

---

[3] Gibson relies heavily upon Kyllo v. United States, 533 U.S. 27 (2001).  In Kyllo, the Supreme Court held the use of a thermal imager showing infrared radiation constitutes a search under the Fourth Amendment when aimed at a house.  Id. at 29-30, 34-35.  There is an enormous difference between a thermal imager detecting infrared radiation and a flashlight aiding the naked eye.  See United States v. Barajas-Avalos, 377 F.3d 1040, 1055-56 (9th Cir. 2004); United States v. Sophoan Oung, 490 F. Supp. 2d 21, 29 n.7 (D. Mass. 2007); United States v. Vela, 486 F. Supp. 2d 587, 590 (W.D. Tex. 2005).

[4] The cases of Sheler v. Commonwealth, 38 Va. App. 465, 566 S.E.2d 203 (2002), and Al-Karrien v. Commonwealth, 38 Va. App. 35, 561 S.E.2d 747 (2002), which Gibson's counsel cited at oral argument, accord with our holding here.  In Sheler, this Court held police violated the Fourth Amendment by conducting a warrantless search of the bottom of a person's shoes.  Sheler, 38 Va. App. at 477-78, 566 S.E.2d at 209.  We took care to note that the defendant "did not display the crevices of the soles of his shoes in any way or otherwise expose them to public scrutiny."  Id. at 477, 566 S.E.2d at 209.  In Al-Karrien, we held an unconstitutional search occurred where a police officer discovered contraband after stirring a cup of noodles held by a person in a convenience store.  Al-Karrien, 38 Va. App. at 40-41, 48, 561 S.E.2d at 749-50, 754.  The plain view doctrine did not apply since the officer failed to notice anything unusual before stirring the noodles.  Id. at 46, 561 S.E.2d at 752-53.  Whereas these two cases involved searches of objects not exposing evidence to plain view, in this case Gibson openly exposed the marijuana in his pocket to Officer Hahn's vision.

deputies' use of a flashlight to illuminate the interior of the jacket pocket did not change the plain view nature of the discovery." Id. at 183.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.