**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0689n.06

**No. 11-3547**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | **Jun 28, 2012** |
| Plaintiff-Appellee, | ) | LEONARD GREEN, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| RASHAWN HARPER, | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: BATCHELDER, Chief Judge; GRIFFIN, Circuit Judge; and COHN, Senior District Judge.[*]

COHN, Senior District Judge.

This is a criminal case. Defendant-Appellant Rashawn Harper ("Harper") appeals from his jury conviction and sixty month sentence for being a felon in possession of a firearm. Harper argues that the firearm should have been suppressed because the police officer who seized the firearm impermissibly expanded the scope of the traffic stop by using a flashlight. He also argues that trial counsel was ineffective. For the reasons that follow, we affirm the district court's denial of Harper's motion to suppress and decline to review his ineffective assistance of counsel claim.

**I. Background**

---

[*]The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

Around midnight on May 20, 2009, Kevin Kelly ("Kelly"), a sergeant with the Cleveland Police Department, was on patrol alone. He spotted a 2003 Chevy Trailblazer ("SUV") parked by a phone booth at a BP gas station. Kelly was aware that this particular BP gas station was well-known for drug trafficking activity. Kelly therefore believed the occupants of the SUV were setting up a drug transaction. Kelly followed the SUV when it exited the gas station. Kelly observed the car pull in and out of driveways, stop on a side street and park, before taking off again. Kelly then observed the SUV driving without headlights and make a right turn without using a turn signal. At that point, approximately 12:30 p.m., Kelly initiated a traffic stop.

As Kelly approached the SUV, he could see there were four occupants inside. Kelly also saw movement within the SUV. While speaking with the driver and obtaining his license, Kelly, who had a flashlight, saw a gun on the floor between the driver and passenger, later identified as Harper. Kelly then ordered all of the occupants out of the SUV and conducted a search. When Kelly removed Harper from the SUV, Harper said "That's mine. Can't you just let them go? They don't have anything to do with it." Kelly then ticketed the driver, later identified as Harper's cousin, for the traffic infractions.

On June 16, 2009, Harper was indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).[2]

On the first scheduled day of trial, at Harper's urging, counsel orally moved to suppress the firearm seized on the grounds that the stop was pretextual. Counsel first explained that although he

---

[2]Harper was previously convicted of four counts of aggravated robbery in state court.

was unsuccessful in locating the driver of the SUV,[3] he would offer evidence on the issues the driver would have offered. The district court then conducted a suppression hearing.

At the hearing, Kelly testified as described above. When asked about the reason for using the flashlight, Kelly explained that he always shines a flashlight into a vehicle when making a stop, especially when there are multiple occupants. He also said he was concerned for his safety because he saw movement before walking up to the SUV.

Harper gave a different account of the events. Harper denied the SUV stopped at the gas station. Harper also testified that the SUV's headlights were on when it was stopped. He further testified that the SUV made a left, not a right turn. Harper denied having a gun that night and that there was a gun in the SUV.

The district court noted the conflicting testimony. Crediting Kelly's testimony over Harper's, the district court denied the motion. The district court found that probable cause existed for the stop based on the traffic violations and that the gun was in plain view and therefore properly seized. The district court then directed that trial begin the next day.

At trial, Kelly testified that Harper's statement indicating ownership of the gun was not in response to a question. Brian Morehead ("Morehead"), an officer with the Cleveland police department, testified that while waiting for a tow truck, he heard Harper tell a police sergeant, who was deceased at the time of trial, that "I roll with my steel." Morehead further testified that "steel" was a slang term for a gun. Harper did not testify at trial. The jury convicted Harper as charged.

---

[3]The record details counsel's and the district court's substantial efforts in attempting to locate the driver, all of which were unsuccessful.

## II.  Discussion

## A.  Motion to Suppress

## 1.  Standard of review

Harper first contends that the district court erred in denying his motion to suppress the firearm.  This court reviews the district court's ruling on a motion to suppress under a mixed standard: "'we review the district court's findings of fact for clear error and its conclusions of law *de novo*.'"  *United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009) (quoting *United States v. Gross*, 550 F.3d 578, 582 (6th Cir. 2008)).  When, as here, the district court denied the motion to suppress, this court reviews the evidence "'in the light most favorable to the government.'"  *Id*. (quoting *United States v. Pearce*, 531 F.3d 374, 379 (6th Cir. 2008)).  The reasonableness of a seizure under the Fourth Amendment "'is a question of law that we review *de novo*.'"  *United States v. Everett*, 601 F.3d 484, 488 (6th Cir. 2010) (quoting *United States v. Evans*, 581 F.3d 333, 340 (6th Cir. 2009)).

This court analyzes the reasonableness of a traffic stop under the standards set forth in *Terry v. Ohio,* 392 U.S. 1 (1968) and its progeny.  *See Everett*, 601 F.3d at 488.  The Fourth Amendment requires that a traffic stop, like a *Terr*y stop, must be based on reasonable suspicion.  *See United States v. Davis*, 430 F.3d 345, 353–54 (6th Cir. 2005).  In addition, " 'the degree of intrusion [must be] reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances.'"  *Id.* at 354 (quoting *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993)).  This means that the police cannot unreasonably extend the scope and duration of an otherwise lawful traffic stop.  *See*

*Everett*, 601 F.3d at 488–89; *see also Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("[A] seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution."). An officer's inquiry into matters unrelated to the initial stop does not unlawfully prolong the encounter so long as the questioning does not "measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009); *see also Everett*, 601 F.3d at 491–96. Finally, an officer may extend a stop beyond what was originally permissible if "something happened during the stop to cause the officer to have a reasonable and articulable suspicion that criminal activity is afoot." *Davis*, 430 F.3d at 353 (internal quotation marks and alterations omitted).

## 2. Analysis

On appeal, Harper does not challenge the legality of the initial stop; rather, he contends that the stop was improperly expanded by Kelly's use of a flashlight. This argument is not well-taken for several reasons. First, Harper did not present this argument to the district court. Under Fed. R. Crim. P. 12(e), a party "waives" any pretrial defense or objection that was not raised before the trial court's pretrial motion deadline. The rule permits the court to grant relief from the waiver only for "good cause." Even when a party has brought a pretrial suppression motion, as Harper did here, any new suppression arguments raised for the first time on appeal that were not contained in the original suppression motion are deemed waived under Rule 12(e). *See United States v. Critton*, 43 F.3d

1089, 1093 (6th Cir. 1995). Harper has not presented any argument to show "good cause" for failing to raise the issue as to the scope of the stop below.[4]

Second, even if Harper had presented "good cause," he still cannot prevail. New suppression arguments raised for the first time on appeal are subject to review for plain error. *See Critton*, 43 F.3d at 1094. The plain error doctrine is to be used only in exceptional circumstances to avoid a miscarriage of justice. *Id.* An error is plain when it is obvious, affects substantial rights, and seriously affects the fairness or integrity of judicial proceedings. *Johnson v. United States*, 520 U.S. 461, 466–67 (1997).

Harper cannot establish plain error. This is so because the plurality decision of the United States Supreme Court in *Texas v. Brown*, 460 U.S. 730 (1983) instructs that it is not unconstitutional for an officer to look inside a vehicle using a flashlight. The plurality explained:

> It is likewise beyond dispute that [the officer's] action in shining his flashlight to illuminate the interior of Brown's car trenched upon no right secured to the latter by the Fourth Amendment. The Court said in *United States v. Lee*, 274 U.S. 559, 563, 47 S.Ct. 746, 748, 71 L.Ed. 1202 (1927), that "[The] use of a searchlight is comparable to the use of a marine glass or a field glass. It is not prohibited by the Constitution." Numerous other courts have agreed that the use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection.

*Id*. at 739-40, 103 S.Ct. at 1542. This court has applied the reasoning in *Brown* to likewise conclude that an officer's use of a flashlight to look into the interior of a vehicle during a valid traffic stop does not implicate the Fourth Amendment. *See United States v. Anthony*, 47 F. App'x 731 (6th Cir.

---

[4]While Harper has claimed ineffective assistance of counsel, the claim is not based on trial counsel's failure to challenge the scope of the stop or Kelly's use of a flashlight.

2002); *United States v. Weatherspoon*, 82 F.3d 697, 699 (6th Cir. 1996). Based upon this precedent, Kelly's use of a flashlight was not an improper extension of the scope of the stop.

Moreover, the record does not support Harper's assertion that the stop was completed at the time Kelly used the flashlight. While Harper contends that the driver immediately handed his license to Kelly, it was never established at the suppression hearing when the driver produced his license. However, it makes little difference because Kelly was justified in using a flashlight at any time during the stop without running afoul of the Fourth Amendment.

Overall, the use of the flashlight was not improper and did not exceed the scope of the stop. It necessarily follows that the firearm, which Kelly testified he saw on the floor between the driver and Harper, was in plain view and therefore subject to seizure. The district court certainly did not err, much less plainly err, in denying Harper's motion to suppress.

## B. Ineffective Assistance of Counsel

Harper also argues that his trial counsel was ineffective because counsel failed to file a written motion to suppress regarding the scope of the stop, instead waiting until the first day of trial. Harper further says that his trial counsel failed to move to suppress Harper's incriminating statements. The government says that Harper's claim is not sufficiently developed for appellate review and if it was, the claim lacks merit.

It is well-established that this court will review claims of ineffective assistance on direct appeal only in those "rare cases where the error is apparent from the existing record." *United States v. Lopez–Medina*, 461 F.3d 724, 737 (6th Cir. 2006). In other circumstances, a claim is properly

7

raised in a motion for post-conviction relief under 28 U.S.C. § 2255. *Massaro v. United States*, 538 U.S. 500, 504–05 (2003).

Here, Harper's allegations of ineffective assistance of counsel require a fact-specific examination of trial counsel's alleged performance deficiencies. While trial counsel orally moved to suppress the firearm based on the traffic stop, the record is silent as to why counsel chose not to file a written motion or other suppression motions. Other than expressing dissatisfaction with counsel's performance, Harper has not explained how the record is sufficiently developed to support his allegations of ineffectiveness, including whether Harper asked trial counsel to seek suppression of his statements. Moreover, no error is apparent from the record. Thus, there is no justification for departing from the practice of deferring consideration of such claims to a proceeding under 28 U.S.C. § 2255. *See United States v. Hunter*, 558 F.3d 495, 508 (6th Cir. 2009); *United States v. Gonzalez*, 501 F.3d 630, 644 (6th Cir. 2007). As such, Harper's claim is premature.

## III. Conclusion

For the reasons stated above, the district court's decision on the motion to suppress is AFFIRMED and we decline to review Harper's ineffective assistance of counsel claim.